UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4111-CAS (PLAx) | Date | August 1, 2013 |
|---|---|---|---|
| Title | ROMYE ROBINSON, ET AL. V. DELICIOUS VINYL RECORDS INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not present | Not present |

**Proceedings:** (In Chambers:) **PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** (filed June 12, 2013) [7]

**I.    INTRODUCTION**

On June 7, 2013, plaintiffs Romye Robinson and Imani Wilcox filed suit against defendants Delicious Vinyl Records, LLC, ("DVR"), Trevant Hardson, and Derrick Stewart. Plaintiffs assert the following fourteen claims for relief: (1) breach of the Settlement/Dissociation Agreement; (2) breach of the Tour Agreement; (3) breach of the Recording Contract; (4) common law trademark infringement of the Pharcyde mark; (5) common law trademark infringement of the Bizarre Ride mark; (6) violation of right of publicity pursuant to Cal.Civ. Code § 3344; (7) violation of common law right of publicity; (8) unfair competition pursuant to 15 U.S.C. § 1125(a); (9) unfair competition pursuant to Cal. Bus. & Prof. Code §17200; (10) false advertising pursuant to Cal. Bus. & Prof. Code § 17500; (11) unjust enrichment; (12) injunctive relief; (13) accounting; and (14) declaratory relief.

Plaintiffs filed an ex parte application for a temporary restraining order ("TRO") on June 12, 2013. Dkt. No. 7. The Court denied plaintiff's application and ordered defendants to show cause as to why a preliminary injunction should not issue. Dkt. No. 16. On July 1, 2013, defendants filed an opposition to plaintiffs' application. Dkt. No. 24. On July 8, 2013, plaintiffs filed a reply. Dkt. No. 30. The Court held a hearing on July 22, 2013, at which counsel for both parties agreed to try and resolve this motion through a stipulated preliminary injunction. The Court held a further telephonic conference on July 26, 2013, at which counsel indicated that they were unlikely to be able to do so at this time. Per the Court's instructions, each side submitted a proposed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 13-4111-CAS (PLAx) | Date | August 1, 2013 |
|---|---|---|---|
| Title | ROMYE ROBINSON, ET AL. V. DELICIOUS VINYL RECORDS INC., ET AL. | | |

preliminary injunction. After considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

### A. The Agreements

Plaintiffs Robinson and Wilcox and defendants Hardson and Stewart formed the hip-hop group "The Pharcyde" in 1989. Hardson's stage name is "Slimkid3," and Stewart's is "Fatlip." On or about May 31, 1992, each member of the Pharcyde entered into the Recording Contract with defendant DVR, which contemplated that the group would release seven work-for-hire LPs recorded and mastered by DVR. Pursuant to a "Grant of Rights" in this agreement, the members of the Pharcyde agreed that:

> All master recordings . . . and all phonograph records and other reproductions made therefrom, together with the performances embodied therein and all copyrights therein and thereto . . . shall be entirely [DVR's] property, free of any claims whatsoever by you . . .

> [DVR] and/or [its] designees shall have the exclusive worldwide right in perpetuity to manufacture, sell, distribute, and advertise phonograph records or other reproductions (visual and nonvisual) embodying such master recordings, to lease, license, convey, or otherwise use or dispose of such master recordings by any method . . ., to release phonograph records or other reproductions embodying such master recordings under any trademarks, trade-names, or labels, [and] to perform such phonograph records or other reproductions publicly . . . all upon such terms and conditions as [DVR] may approve, and to permit any other person, firm, or corporation to do any or all of the foregoing . . . .

Decl. of Romye Robinson, Ex. 2 ¶ 4(a) (emphasis added). DVR and its designees also obtained:

> the worldwide right in perpetuity to use and to permit others to use [their] name[s] (both legal and professional, and whether presently or hereafter used by [them]), approved likeness, other identification, and approved biographical material

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4111-CAS (PLAx) | Date | August 1, 2013 |
|---|---|---|---|
| Title | ROMYE ROBINSON, ET AL. V. DELICIOUS VINYL RECORDS INC., ET AL. | | |

concerning [them] for purposes of advertising, promotion, or trade in connection with such master recordings recorded hereunder, the phonograph records derived therefrom, goodwill advertising related to [DVR's] record business.

Id. ¶ 5(a).

Pursuant to the Recording Contract, and with the contributions of producers "J-Sw!ft" and L.A. Jay, DVR released the Pharcyde's "Bizarre Ride II the Pharcyde" album ("the album") in November 1992. The album also included artwork depicting "cartoon-like" caricatures of Pharcyde group members, photographs of the group, as well as unique fonts designed by a professionally-known artist. DVR obtained a copyright on the sound recording, artwork, and photography for this album. By all accounts, the album was a great success, selling over 500,000 copies and attracting critical acclaim.

After releasing one additional album under the 1992 recording agreement, Stewart left the group in 1997. Plaintiffs and defendant Hardson then entered into an agreement with DVR ("1997 Amendment") terminating the original Recording Contract and adopting a new recording arrangement going forward. This agreement did not purport to modify the terms of the Recording Contract with respect to any albums recorded under the terms of that agreement, including the Bizarre Ride II the Pharcyde album.[1]

Robinson, Wilcox, and Hardson continued to perform as a trio under the Pharcyde name until defendant Hardson left the group, on or about August 1, 1999. In 2004, plaintiffs and defendant Hardson entered into a Settlement Agreement and Mutual General Release of Claims ("Settlement Agreement"). Dkt. No. 1, Ex. No. 3. Exhibit A to the Settlement Agreement is defendant Hardson's written Dissociation Agreement ("Dissociation Agreement"). Id.

---

[1] Similar to the 1992 Agreement, this contract granted DVR the perpetual right to "use the names, portraits, pictures, and likenesses of [the Pharcyde members] in connection with the marketing and exploitation of Phonograph Records and Covered Videos" made under this 1997 Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4111-CAS (PLAx) | Date | August 1, 2013 |
|---|---|---|---|
| Title | ROMYE ROBINSON, ET AL. V. DELICIOUS VINYL RECORDS INC., ET AL. | | |

    Pursuant to the Dissociation Agreement, Hardson agreed not to "avail himself of or use the name, trademark, and/or designation 'The Pharcyde,' 'Pharcyde,' . . . or any derivative or substantially similar designation, in any medium or commercial manner whatsoever," except that Hardson retained the right "to make public reference to himself as formerly of The Pharcyde." Id. Hardson also acknowledged that plaintiffs:

> are and shall continue to be the sole and exclusive owner[s] of all right, title and interest in and to the name, trademark and or designation 'Pharcyde' or 'The Pharcyde' and shall have the continuing, unrestricted, and exclusive right to use the name, trademark and/or designation 'Pharcyde' or The 'Pharcyde' in any medium or commercial manner whatsoever.

Id. The parties also acknowledged that any breach of the Settlement Agreement is "likely to result in immediate and irreparable harm to the non-breaching party," and therefore consented "to injunctive and other appropriate equitable relief upon the institution of proceedings therefor by the non-breaching party." Id. ¶ 7. In addition, the parties agreed to submit all disputes arising under this agreement to binding arbitration. Id. Ex. A, ¶ 6.

    In 2008, plaintiffs and Hardson and Stewart embarked on a reunion tour, in anticipation of which they entered into an agreement with plaintiffs ("Tour Agreement"). Dkt. No. 1, Ex. No. 4.[2] Pursuant to the Tour Agreement, plaintiffs and Hardson and Stewart agreed that:

> Ownership of 'The Pharcyde' name, intellectual property, and likenesses are and shall remain the sole property of [plaintiffs]. This includes album artwork, merchandise designs, and other elements that the public may associate with The Pharcyde. [ Hardson and Stewart] acquire no direct right to the name or any of its affiliations by virtue of their participation in this project.

Id. ¶ 3. Hardson and Stewart again reserved the right to present themselves as "formerly of the Pharcyde." Id. ¶ 4. DVR is not a party to this agreement.

---

[2] Only the "Short Form Group Tour Agreement" is presently before the Court; it is unclear if the parties entered into a further agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4111-CAS (PLAx) | Date | August 1, 2013 |
|---|---|---|---|
| Title | ROMYE ROBINSON, ET AL. V. DELICIOUS VINYL RECORDS INC., ET AL. | | |

Pursuant to these agreements, since at least 2004 up until 2012, plaintiffs had comprised the only group of individuals performing as "The Pharcyde," without the participation or involvement of Stewart and Hardson, save for a brief spell during the 2008 reunion tour.

  **B. The "Bizarre Ride Live" Tour**

In early 2012, DVR decided to market and promote the re-release of the Bizarre Ride album. As part of this twentieth anniversary commemoration, DVR organized and produced a live performance of Bizarre Ride in its entirety—by defendants Hardson and Stewart, along with producers "J-Sw!ft" and "LA Jay"—at the Roxy Theater in Los Angeles on May 23, 2012. DVR billed these four individuals as a new group called "Bizarre Ride Live." Decl. of Michael Ross ¶ 11.

The initial posters for this event prominently featured "Delicious Vinyl Presents: Bizarre Ride II The Pharcyde Live!" across the top, proclaiming that the full album would be performed "from start to finish," by Fatlip, Slimkid 3, J.Sw!ft, and LA Jay, "Celebrating the 20 Year Anniversary." Decl. of Kyle Mortensen Ex. B. The poster does not mention the purported group name "Bizarre Ride Live."[3] Plaintiffs' attorney objected to this advertisement prior the Roxy show, contending that while they "respect[ed] [DVR and the Roxy's] right to promote a special performance of the album titled, The Bizarre Ride II: The Pharcyde by former members of the Pharcyde," the format of the advertisements for the show is "blatantly misleading." Id. The May 23 show at the Roxy proceeded as planned and was commercially successful.

Due to the success of the show, defendants decided to expand the "20th Anniversary Bizarre Ride Live" show to other venues in the United States and abroad. The principal of DVR and Hardson's manager testify that they made clear in their communications and negotiations with third-party concert tour promoters that the

---

  [3] A press release issued by DVR for this show billed it as "a one-night only performance of the album in its entirety" by "founding and former Pharcyde members Fatlip and Slimkid3." Ross Decl. Ex. F.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4111-CAS (PLAx) | Date | August 1, 2013 |
|---|---|---|---|
| Title | ROMYE ROBINSON, ET AL. V. DELICIOUS VINYL RECORDS INC., ET AL. | | |

"Bizarre Ride Live Tour" was intended to "commemorate" the Bizarre Ride album, and was not a "Pharcyde" reunion tour and could not be promoted as a "Pharcyde" show. Ross Decl. ¶ 15. This included a promotional magazine and website for the "Bizarre Ride II The Pharcyde Bizarre Ride Live World Tour," which notes that "while Bootie Brown [Robinson] and Imani continue to tour as 'The Pharcyde,' this tour will feature a "new hip hop group" known as "Bizarre Ride." Ross Decl. Ex. G.[4]

    However, as plaintiffs have extensively documented, a number of the advertisements and promotional materials for these shows referred to these performances as "Pharcyde" shows, or at least gave the impression that "The Pharcyde" would be performing at these shows. These include advertisements from shows in Chicago, San Francisco, France, and Ireland; a internet advertisement from a European promoter stating that it is "Now Booking Pharcyde European Tour"; and a published interview featuring Hardson and Stewart as "The Pharcyde." Robinson Decl. Ex. 5. In June 2012, Ross (of DVR) allegedly sent a letter to various promoters and booking agents acknowledging that plaintiffs had been issuing threats of litigation over the proposed Bizarre Ride Live Tour, but that since DVR's show "is not being promoted as "The Pharcyde," plaintiffs had no legal basis for their claim. In any event, DVR offered to indemnify these third-parties against any claims arising out of their promotion of DVR's show. Campbell Decl. Ex. 3. Plaintiffs sent a cease and desist letter in June 2012 to Hardson's agent regarding the "Pharcyde European Tour" advertisement, contending that this was in direct violation of the Settlement Agreement. Robinson Decl. Ex. 6.

    Since mid-2012, Hardson and Stewart have made numerous appearances as part of the Bizarre Ride Live Tour promoted by DVR in both the United States and Europe, reaching almost thirty cities in 2013 alone, receiving an average of $5,000 to $10,000 in profits per show. Ross Decl. ¶ 23. Based on the success of the tour thus far, DVR indicates that it "may" present additional Bizarre Ride Live Tour performances in North America later this year, as well as in Asia and South America.

---

    [4] Plaintiffs further contend that defendants have purposefully scheduled tour dates in the same cities as plaintiffs, often before plaintiffs are scheduled to perform, including in San Francisco and London. Defendants deny engaging in this practice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4111-CAS (PLAx) | Date | August 1, 2013 |
|---|---|---|---|
| Title | ROMYE ROBINSON, ET AL. V. DELICIOUS VINYL RECORDS INC., ET AL. | | |

### III.   LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984). Under either formulation, demonstrating a likelihood of success on the merits and irreparable harm is "most critical." Nken v. Holder, 556 U.S. 418, 434 (2009).

### IV.   DISCUSSION

   A.   **Likelihood of Success on the Merits**

      1.   **Breach of Contract**

To determine plaintiffs' likelihood of success on their claims for breach of contract and trademark infringement, the Court must first determine whether plaintiffs have consented to defendants' use of the marks, as well as their names and likenesses. The parties do not appear to dispute that DVR had the right to present and promote the original "20th Anniversary" Bizarre Ride II The Pharcyde Live! Show at the Roxy Theater in May 2012. As plaintiffs' attorney noted at the time, plaintiffs "respected" the right of DVR to present "*a* special performance" of this nature (emphasis added).

In addition, the Court finds that defendants, not plaintiffs, are likely to succeed on their contention that DVR's presentation of the Bizarre Ride Live 20th Anniversary Tour is authorized by the 1992 recording agreement. The current tour is a performance of the Bizarre Ride album, in its entirety, and the tour is being promoted as such in print advertising and other media, designed to generate interest in the 20th anniversary re-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4111-CAS (PLAx) | Date | August 1, 2013 |
|---|---|---|---|
| Title | ROMYE ROBINSON, ET AL. V. DELICIOUS VINYL RECORDS INC., ET AL. | | |

release of the original Bizarre Ride II The Pharcyde album. On stage, defendants do not refer to themselves as Pharcyde, but only as "Bizarre Ride Live." Therefore, the Court finds that defendants are likely to prevail on their contention that the tour is permissible under DVR's contractual right to "promote" the 20th anniversary re-release of the Bizarre Ride album.

There is no dispute that both Hardson and Stewart retained the right to refer to themselves as "formerly of the Pharcyde" in connection with their future performances of any kind, as they have done during the Bizarre Ride Live Tour. Of course, instances where the show was promoted as involving "The Pharcyde," as opposed to members "formerly of The Pharcyde," are not permitted under the recording agreement. To date, however, plaintiffs have no evidence that DVR, as opposed to third parties, ever distributed or caused to be distributed promotional materials of this nature.

The Court further finds that the right to promote the release of the 20th Anniversary album through additional concerts is not indefinite under these agreements, a contention that neither party disputes for purposes of their proposed injunctions. Defendants argue that they should have the right to promote the album until June 2014, but the Court finds that this reaches too far. Instead, defendants should be limited to promotions within the 20th anniversary year, which ends on November 23, 2013. Plaintiffs are likely to succeed on their claim that further performances after November 23, 2013, would be in violation of the parties' agreement, as a reasonable reading of the recording agreement provides that defendants may only "promote" a 20th anniversary re-release of the album during the twentieth year.

### 2. Trademark Claims

Even if DVR has the right to promote the Bizarre Ride Live Tour, plaintiffs contend that defendants should be held liable for the actions of their third-party promoters, as defendants have ratified their actions even if these agents did not have apparent authority to bind defendants.

Defendants could be liable for the acts of third parties under two different legal doctrines. First, a defendant may be held liable for "contributory trademark infringement" where the defendant "(1) intentionally induces another to infringe on a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4111-CAS (PLAx) | Date | August 1, 2013 |
|---|---|---|---|
| Title | ROMYE ROBINSON, ET AL. V. DELICIOUS VINYL RECORDS INC., ET AL. | | |

trademark or (2) continues to supply a product knowing that the recipient is using the product to engage in trademark infringement." Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996) (citing Inwood Laboratories v. Ives Laboratories, 456 U.S. 844, 844–46 (1982)). "When the alleged direct infringer supplies a service rather than a product, under the second prong of this test, the court must consider the extent of control exercised by the defendant over the third party's means of infringement." Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 807 (9th Cir. 2007) (citing Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980 (9th Cir. 1999)). To be held liable, a defendant must exercise "direct control and monitoring" of the third party. Id.

The Court finds that plaintiffs are likely to succeed on their contributory trademark infringement claim. Plaintiffs have not produced evidence that demonstrates that defendants have "intentionally inducing" infringement of plaintiffs' Pharcyde mark by third parties, and therefore plaintiffs are unlikely to succeed under the first prong of the Inwood Laboratories test. However, the evidence at present demonstrates that defendants continued with their tour for the better part of a year knowing that a significant number of venues and third-party promoters were infringing upon plaintiffs' "Pharcyde" mark. Third-party agents have represented that "The Pharcyde" is the group that would be performing at a number of different venues in different cities, even though the group performing was in fact composed of Hardson and Stewart. Indeed, the potential for confusion appears to be ongoing. Since the original hearing on plaintiffs' motion, the Roxy Theater issued a Twitter message proclaiming that "BizarreRide Live (AKA Pharcyde)" would be performing on August 3, 2013. This message was immediately removed by the Roxy following plaintiffs' complaint.

Defendants admit to their "direct control and monitoring" of these third parties, as they have instructed third-parties to remove various infringing advertisements and promotional materials on numerous occasions, and these parties have complied. Moreover, defendants agreed to indemnify at least some of these promoters and venues in the event that plaintiffs instigated litigation. Accordingly, the Court concludes that plaintiffs are likely to succeed on their claim that defendants have engaged in contributory trademark infringement.

Second, "[v]icarious liability for trademark infringement requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4111-CAS (PLAx) | Date | August 1, 2013 |
|---|---|---|---|
| Title | ROMYE ROBINSON, ET AL. V. DELICIOUS VINYL RECORDS INC., ET AL. | | |

one another in transactions with third parties or exercise joint ownership or control over the infringing product." Perfect 10, Inc., 494 F.3d at 807. As with plaintiffs' contributory infringement claim, plaintiffs are likely to demonstrate that defendants exercised the degree of control necessary for plaintiffs to succeed on their claim for vicarious trademark infringement. DVR directly engages these third party promoters and venues to promote its Bizarre Ride Live shows, and as noted above, appears to have complete control over the content of all promotional materials. Although defendants argue that they have "rapidly" addressed these alleged instances of infringement whenever they arose, the fact that these confusing and misleading advertisements continued to appear in a variety of media lends substantial merit to plaintiffs' claim. Accordingly, the Court finds that plaintiffs are likely to succeed on their claim for vicarious trademark infringement.[5]

### B. Likelihood of Irreparable Harm

Plaintiffs maintain that they have lost substantial sums of money due to the competing "Pharcyde" shows and have suffered irreparable damage to their reputations. Fans of the "real" Pharcyde are allegedly disappointed or confused when they buy tickets for defendants' shows, damaging plaintiffs' good will, and the show that these fans do see is not controlled by plaintiffs, damaging their professional and artistic reputations. For example, plaintiffs offer a mid-2012 email from a fan, who indicates that he is confused as to who the "real" Pharcyde is. Plaintiffs also offer declarations from their agent, as well as from European booking agents or promoters who testify to plaintiffs' diminished reputation, decrease in ticket sales, and difficulty in booking future performances.

Courts have repeatedly found that losing control of one's reputation and good will in the marketplace supports the issuance of an injunction. See, e.g., Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened

---

[5] The Court agrees with defendants that Hardson and Stewart's use of the phrase "formerly of the Pharcyde" is fair use, as well as the use of "Pharcyde" in the context of the Bizarre Ride album title. Defendants do not argue, however, that the impermissible uses of "Pharcyde" by third-parties are somehow excused by the fair use doctrine.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4111-CAS (PLAx) | Date | August 1, 2013 |
|---|---|---|---|
| Title | ROMYE ROBINSON, ET AL. V. DELICIOUS VINYL RECORDS INC., ET AL. | | |

loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); CytoSport v. Vital Pharmaceuticals, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) ("[I]f another person infringes [a plaintiff's] marks, that person borrows the owner's reputation, whose quality no longer lies within the owner's control. A trademark owner's loss of the ability to control its marks, thus, creates the potential for damage to its reputation.") (citation omitted).

Here, plaintiffs have demonstrated that they are likely to suffer irreparable harm to their professional and artistic reputations or non-ascertainable monetary damages in the absence of preliminary injunctive relief. As plaintiffs are the undisputed owners of the "Pharcyde" musical brand and business, the promotion of defendants as an alternative "Pharcyde" likely threatens plaintiffs' goodwill and reputation in the music community, in addition to their loss of market share. Taken as a whole, this is sufficient to support a finding of irreparable injury.

### C. Balance of the Equities and Public Interest

Next, "[i]n each case, a court must balance the competing claims of injury and must consider the effect on each party of granting or withholding of the requested relief." Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 542 (1987). Defendants would face significant hardship if enjoined from performing completely, but the potential hardship to them here is limited, because Court finds that such an injunction is not appropriate. The equities in this respect weigh in plaintiffs' favor, as plaintiffs have demonstrated the harm that is likely to befall them in the absence of injunctive relief.

In addition, the Court must consider the public interest in enjoining defendants' conduct. Winter, 555 U.S. at 32. "The usual public interest concern in trademark cases [is] avoiding confusion to consumers." Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc., 559 F.3d 985, 991 (9th Cir. 2009). This is the case here.

### D. Scope of the Injunction and Bond

Based on the foregoing, the Court finds that a limited prohibitory injunction is an appropriate remedy in this case. This type of injunctive relief "preserve[s] the status quo pending a determination of the action on the merits," rather than ordering a party "to take

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4111-CAS (PLAx) | Date | August 1, 2013 |
|---|---|---|---|
| Title | ROMYE ROBINSON, ET AL. V. DELICIOUS VINYL RECORDS INC., ET AL. | | |

action." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 878 (9th Cir. 2009).

As to DVR and Stewart, Defendants must ensure that their performances on the Bizarre Ride Live Tour are not promoted as "Pharcyde" shows in a manner likely to cause consumer confusion. Based on the evidence adduced thus far, defendants' actions in ensuring that third-parties comply with defendants' own mandates for marketing their Bizarre Ride Live Tour have been insufficient.

Finally, the Court finds that a bond in the amount of $50,000 is appropriate. Fed. R. Civ. P. 65(c). This amount will reasonably compensate defendants in the event that it is ultimately determined at trial that they have been wrongfully enjoined.

## V. CONCLUSION

In accordance with the foregoing, plaintiffs' motion for a preliminary injunction is GRANTED as described herein. A separate injunction shall issue.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |